IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| SAVVY REST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:18CV00030 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SLEEPING ORGANIC, LLC, | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

Savvy Rest, Inc. ("Savvy Rest") filed this action against Sleeping Organic, LLC ("Sleeping Organic"), asserting claims of trademark infringement, unfair competition, and false advertising under the Lanham Act, and related claims of trademark infringement and unfair competition under Virginia law. Sleeping Organic has moved to dismiss the case for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the District of South Carolina. The motion has been fully briefed and is ripe for review.[1] For the reasons set forth below, the defendant's motion will be denied.

## Background

Savvy Rest is a Virginia corporation based in Charlottesville, Virginia. Compl. ¶ 1, Dkt. No. 1. The company has been selling organic mattresses in Virginia for more than a decade. Id. ¶ 8. Savvy Rest maintains retail locations in Charlottesville and Vienna, Virginia; Rockville, Maryland; and Berkley, California. Id. ¶ 9. Plaintiff also sells and distributes mattresses through independent dealers across the country. Id. ¶ 10. Savvy Rest's mattresses have been certified to meet the requirements of the Global Organic Textile Standard ("GOTS"), which has been

---

[1] Sleeping Organic did not formally move to dismiss any of the plaintiff's claims for lack of standing. Nonetheless, in the supplemental brief filed in support of the pending motion, the defendant summarily argued that the plaintiff "lacks standing to bring any false advertising claims in this case." Def.'s Supp'l Br. 9, Dkt. No. 25; see also id. at 1, 5, 7. The plaintiff disputed this assertion and sought leave to amend its complaint to include additional allegations in support of its claims against the defendant. The issue of standing and the plaintiff's requests to amend will be addressed in a separate memorandum opinion.

endorsed by the United States Department of Agriculture. Id. ¶¶ 14–15. Consequently, Savvy Rest's mattresses may be labeled or sold as organic in the United States. Id. ¶¶ 12–13.

In 2009, the plaintiff obtained a certificate of registration from the United States Patent and Trademark Office for the "SAVVY REST" mark. Id. ¶¶ 18–19. The mark covers "retail store and on-line retail store services featuring sleep products, namely, mattresses, spring mattresses, box springs, crib mattresses, adjustable beds, mattress pads, mattress foundations and pillows." Id. ¶ 18 (internal quotation marks omitted). Savvy Rest uses the mark "as its trade name/service mark and a trademark/brand for its mattresses." Id. ¶ 23.

Savvy Rest has been competing with defendant Sleeping Organic for more than 10 years. John Smith Dec. ¶ 16, Dkt. No. 10-2. Sleeping Organic is a limited liability company organized in South Carolina, which is owned and operated by Chris Mullins and Brandon Maxey. Id. ¶ 2; Mullins Aff. ¶ 3, Dkt. No. 9-1. Sleeping Organic's principal place of business is in Mount Pleasant, South Carolina, where the defendant operates its only brick-and-mortar retail location. Mullins Aff. ¶¶ 2, 4. Sleeping Organic also maintains an online retail store at www.sleepingorganic.com, through which customers can order mattresses and other bedding products. Compl. ¶ 24; see also Mullins Aff. ¶ 4 (acknowledging that Sleeping Organic sells mattresses "online through orders placed by customers on a website located at the URL www.sleepingorganic.com").

In the instant action, Savvy Rest claims that Sleeping Organic's website falsely advertises that the defendant's bedding products are "chemical free" and "organic." Compl. ¶¶ 27, 28, 30. Savvy Rest likewise alleges, on information and belief, that Sleeping Organic's mattresses are "not GOTS certified" and that the defendant's website nonetheless "display[s] the GOTS certification trademark prominently superimposed over [its] mattress offerings providing the impression that [an] advertised mattress is a GOTS certified mattress." Id. Savvy Rest alleges

2

that such advertising "is intended to deceive consumers into thinking that the mattress itself is certified organic [pursuant] to the GOTS . . . certification standards and that the entire mattress is completely free from chemicals." Id. ¶ 32. Savvy Rest further alleges that the false or misleading statements regarding the nature, characteristics, qualities, and accreditation of the defendant's mattresses are part of "an effort to divert business and sales away from plaintiff." Id. ¶ 37.

Savvy Rest also claims that Sleeping Organic has used the SAVVY REST mark in online advertising through Google AdWords in an effort to divert sales from the plaintiff. Id. ¶¶ 33–35, 40. In January of 2017, Savvy Rest contacted Sleeping Organic regarding its use of the SAVVY REST mark in online advertising. A representative of Sleeping Organic indicated that "the advertising would be changed" and "that this activity would not happen again." Id. ¶ 42. However, in March of 2018, Sleeping Organic "set into motion new and revised efforts to use Plaintiff's trademark in advertising," including by "using the mark SAVVY REST in one or multiple Google AdWords paid advertisement(s) and . . . in the title of [Sleeping Organic's] sponsored advertisement(s) on Google." Id. ¶ 45.

Savvy Rest filed the instant action against Sleeping Organic on April 13, 2018. Savvy Rest's original complaint contains the following claims: trademark infringement under the Lanham Act (Count I); unfair competition under the Lanham Act (Count II); false advertising in violation of the Lanham Act (Count III); and trademark infringement and unfair competition under Virginia law (Count IV).

On June 7, 2018, Sleeping Organic moved to dismiss the case for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the District of South Carolina. Sleeping Organic submitted an affidavit from Chris Mullins in support of the motion. According to the affidavit, Sleeping Organic does not operate any retail locations in Virginia or

3

own or rent any property in Virginia. Mullins Aff. ¶ 5. Nor does the defendant have any employees in Virginia. Id. The affidavit also indicates that the defendant's advertising through Google AdWords included "no parameters . . . set to intentionally direct advertising to consumers in Virginia over any other consumers," and that the defendant "does no other type of advertising, such as printed ads in periodicals or newspapers, directed specifically at residents of the Commonwealth of Virginia." Id. ¶ 7, 9. The affidavit further alleges, based on "data collected by Google," that "Sleeping Organic did not sell any products to consumers in Virginia through the Google AdWord ad illustrated in [the complaint]." Id. ¶ 10.

Savvy Rest submitted a number of exhibits in response to the pending motion, including a printout from the defendant's website, which describes Sleeping Organic as "a direct-to-consumer online retailer with thousands of happy customers across the United States." Smith Decl. Ex. D; Dkt. No. 10-2. Savvy Rest also submitted exhibits indicating that Sleeping Organic has sold products to customers in Virginia.

On August 2, 2018, the court held a hearing on the defendant's motion via conference call. Following the hearing, the court took the motion under advisement and permitted the plaintiff to engage in limited jurisdictional discovery.

In response to requests for admission propounded by the plaintiff, Sleeping Organic admitted that it accepts orders for mattresses from Virginia residents, that it ships mattresses to Virginia residents after the orders are placed, and that such orders are made using the defendant's online webstore. Resp. to Req. for Admis., Dkt. No. 23-1. Sleeping Organic also admitted that it has sold more than 50 mattresses to Virginia residents through its online web store in the past five years and that its gross sales to Virginia residents have totaled in excess of $100,000. Id. Sleeping Organic objected to, and did not answer, over 20 additional requests for admission.

In response to interrogatories, Sleeping Organic indicated that its gross sales to Virginia residents have totaled more than $219,000.00 since 2012. Resp. to Interrog., Dkt. No. 23-1. A significant portion of the defendant's sales to Virginia customers have occurred in the past two years. Id. Between January 1, 2017 and September 4, 2018, Sleeping Organic sold 39 mattresses to customers in Virginia. Id.

Upon the completion of the limited jurisdictional discovery, the parties filed supplemental briefs on the outstanding issues. The matter is now ripe for review.

## Discussion

Sleeping Organic has moved to dismiss the case for lack of personal jurisdiction and improper venue under Rule 12(b)(2) and (3) of the Federal Rules of Civil Procedure. In the alternative, Sleeping Organic has requested that the court transfer the case to the District of South Carolina, pursuant to 28 U.S.C. § 1404(a). The court will address each argument in turn.

### I. **Personal Jurisdiction**

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. When a defendant moves for dismissal under this rule, "the plaintiff ultimately bears the burden of proving to the district court [] the existence of jurisdiction over the defendant by a preponderance of the evidence." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "Yet when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993); see also SEC v. Receiver for Rex Ventures Grp., LLC, 730 F. App'x 133, 137 (4th Cir. 2018) (holding that the prima facie standard applies when no evidentiary hearing is conducted and the parties are only permitted to engage in limited jurisdictional discovery) (citing Walk Haydel &

Assocs. v. Coastal Power Prod. Co., 517 F.3d 235, 242 (5th Cir. 2008)). "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., Inc., 2 F.3d at 60.

A district court may exercise personal jurisdiction over a nonresident defendant only if: (1) the forum state's long-arm statute confers jurisdiction over the defendant; and (2) the exercise of jurisdiction comports with constitutional due process requirements. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). The United States Court of Appeals for the Fourth Circuit has recognized that "Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause." Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002). Consequently, "'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquires essentially become one.'" Id. (quoting Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135–36 (4th Cir. 1996)); see also Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000) (explaining that the "statutory and constitutional inquiries coalesce into the question of whether [the defendant] had sufficient minimum contacts with Virginia to satisfy due process requirements").

The due process prong of the personal jurisdictional analysis necessitates an inquiry into whether the defendant maintains sufficient "minimum contacts" with the forum state. In the "canonical" case of International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme Court held that a court may exercise jurisdiction over a nonresident defendant only "if the defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (quoting Int'l Shoe Co., 326 U.S. at

316). This requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Since International Shoe was decided, courts have distinguished between "general or all-purpose jurisdiction" and "specific or case-linked jurisdiction." Goodyear, 564 U.S. at 919 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). As the Supreme Court explained in Goodyear, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) [defendants] to hear any and all claims against them when their affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." Id. Specific jurisdiction, on the other hand, depends on "activity or an occurrence that takes place in the forum State" and is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. Consistent with the parties' supplemental briefs, the court will focus its analysis on whether the defendant's contacts with Virginia are sufficient to confer specific jurisdiction.[2]

"For a court to have specific personal jurisdiction over a defendant, the defendant must have 'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'" Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (2016) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). The United States Court of Appeals for the Fourth Circuit "has synthesized the due process requirements for asserting specific personal jurisdiction in a three part test." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009). Under this test, the court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting

---

[2] Savvy Rest acknowledges in its supplemental brief that "general jurisdiction is inapplicable." Pl.'s Supp'l Br. 6, Dkt. No. 23.

7

activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012).

Courts have held that specific jurisdiction requires a "claim-specific analysis." Gatekeeper Inc. v. Stratech Sys., Ltd., 718 F. Supp. 2d 664, 667–68 (E.D. Va. 2010). "A court may, nonetheless, exercise 'pendent personal jurisdiction' over any claim that arises out of a common nucleus of operative facts as the claim over which the court has personal jurisdiction." Hicks v. Jayco, Inc., No. 1:16-cv-01236, 2018 U.S. Dist. LEXIS 42333, at *23 (M.D.N.C. Mar. 15, 2018) (citing N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc., 386 F. Supp. 2d 648, 656 (M.D.N.C. 2005)); see also United States v. Botefuhr, 309 F.3d 1263, 1273 (10th Cir. 2002) (noting that "the majority of federal district courts and every circuit court of appeals to address the question have upheld the application of pendent personal jurisdiction" and finding "no reason why, in certain situations, the assertion of pendent personal jurisdiction would be inappropriate"); Noble Sec., Inc. v. MIZ Eng'g, Ltd., 611 F. Supp. 2d 513, 556 (E.D. Va. 2009) (concluding, based on Fourth Circuit precedent, that the court may exercise "pendent personal jurisdiction over claims arising from a common nucleus of operative fact, whether the additional claim is a state claim or a federal claim") (citing ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 628 (4th Cir. 1997)).

### A. False Advertising Claim

With these principles in mind, the court will first consider Savvy Rest's claim for false advertising under the Lanham Act, which most readily supports the exercise of specific jurisdiction. Section 43(a)(1)(B) of the Lanham Act prohibits an individual or entity from making a "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics,

8

qualities, or geographical origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Savvy Rest claims that Sleeping Organic violated this statute by, inter alia, falsely representing on its commercial website that Sleeping Organic's mattresses are GOTS-certified and chemical-free. Compl. ¶¶ 63–64.

In determining whether specific jurisdiction exists with respect to this claim, the court first considers the extent to which Sleeping Organic purposefully availed itself of the privilege of conducting activities in the Commonwealth of Virginia. "The Supreme Court has not definitively answered how a defendant's online activities translate into contacts for purposes of the minimum contacts analysis." Plixer Int'l v. Scrutinizer GmbH, 905 F.3d 1, 9 (1st Cir. 2018); see also Walden v. Fiore, 571 U.S. 277, 290, n.9 (2014) (noting that the Court was "leav[ing] questions about virtual contacts for another day"). However, several circuits, including the Fourth Circuit, "have adopted 'purposeful availment' requirements that are consistent with the principles articulated in [Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997)]." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452–53 (3d Cir. 2003) (citing ALS Scan v. Digital Service Consultants, Inc., 293 F.3d 707 (4th Cir. 2002)). In Zippo, the district court emphasized that whether jurisdiction is proper "depends on where on a sliding scale of commercial interactivity the web site falls." Id. at 452. In cases where a defendant is "clearly doing business through its web site in the forum state, and where the claim relates to or arises out of the web site, the Zippo court held that personal jurisdiction exists." Id. In contrast, the Zippo court held that the mere availability of a "passive" web site, which "does little more than make information available to those who are interested in it," does not support the exercise of personal jurisdiction. Zippo, 952 F. Supp. at 1124.

In ALS Scan, the Fourth Circuit adopted and adapted the Zippo model, concluding as follows:

9

> [A] State may, consistent with due process, exercise judicial power of a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.

ALS Scan, 293 F.3d at 714.

Unlike the internet activity at issue in ALS Scan, Sleeping Organic's web presence is clearly not "passive." Id. Instead, the undisputed evidence establishes that Sleeping Organic operates a website that falls at the commercially interactive end of the Zippo spectrum. The website allows orders to be placed by customers, and Sleeping Organic regularly conducts sales transactions through the website. Moreover, this is not a case in which a defendant merely made a commercially interactive website accessible within the forum state. Instead, Sleeping Organic has used the website to sell over 80 mattresses to residents of Virginia and generate more than $200,000.00 in gross sales. Thus, even if Sleeping Organic did not specifically target Virginia customers, it purposefully availed itself of the privilege of conducting business in the state, thereby satisfying the first requirement for specific jurisdiction. See Toys "R" Us, Inc., 318 F.3d at 452 ("If a defendant web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied.") (emphasis added); Thousand Oaks Barrel Co., LLC v. Deep South Barrels LLC, 241 F. Supp. 3d 708, 716–17 (E.D. Va. 2017) ("The lack of ads targeted at Virginia does not change the fact that Deep South Barrels used its website to reach into Virginia to do business there."); Tool Shed, Inc. v. Mattoon Rural King Supply, Inc., No.

6:17-cv-1660, 2017 U.S. Dist. LEXIS 154888, at *6 (D.S.C. Sept. 22, 2017) ("Applying the three prongs of ALS Scan, the court finds that Rural King's sale of infringing products to South Carolina addresses through its website is sufficient to establish specific jurisdiction."); Collier v. Land & Sea Rest. Co., LLC, No. 7:13-cv-00104, 2014 U.S. Dist. LEXIS 147118, at *26 (W.D. Va. Oct. 15, 2014) (Conrad, J.) ("Even if Norm Bloom did not specifically target Virginia customers (as opposed to customers in other states), Norm Bloom in fact sold to a number of Virginia customers and thus purposefully availed itself of the privilege of selling its products in Virginia, including shipping those products directly to Virginia."); Robinson v. Bartlow, No. 3:12-cv-00024, 2012 U.S. Dist. LEXIS 143323, at *15 (W.D. Va. Oct. 3, 2012) (Moon, J.) ("Given its [active] website and the sales and shipments that were actually made in Virginia, through an established stream of commerce, this Court may exercise specific jurisdiction over Defendant[.]").

The second prong of the test for specific jurisdiction focuses on whether the plaintiff's claims "arise out of the activities directed at the forum." Consulting Eng'rs Corp., 561 F.3d at 278. Savvy Rest's claim for false advertising is based, at least in part, on false or misleading representations on the website that Sleeping Organic uses to sell mattresses in Virginia and compete with the plaintiff. Accordingly, the court is satisfied that this claim arises out of Sleeping Organic's forum-related activities. See, e.g., IvyMedia Corp. v. iLIKEBUS, Inc., No. 1:15-cv-11918, 2015 U.S. Dist. LEXIS 91342, at *8 (D. Mass. July 13, 2015) ("The Court concludes that plaintiff's claims are related to defendants' in-state activities because the alleged wrongdoing arises out of the publication of a website that is continuously available to Massachusetts residents and [allegedly] causing tortious injury in Massachusetts to [plaintiff].") (alteration in original) (citation omitted).

11

The final prong of the three-party inquiry requires the court to determine whether the exercise of personal jurisdiction is constitutionally reasonable. This prong "protects a party from litigation so gravely difficult and inconvenient that [the] party unfairly is at a severe disadvantage in comparison to [its] opponent." ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 392 (4th Cir. 2012) (alterations in original) (internal quotation marks omitted). "To defeat jurisdiction on this basis, a defendant must establish, despite the presence of minimum contacts, 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. at 393 (quoting Burger King, 471 U.S. at 477). Factors relevant to this inquiry include: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Consulting Eng'rs Corp., 561 F.3d at 279.

After considering all of the relevant factors, the court concludes that the exercise of jurisdiction would comport with "fair play and substantial justice." Burger King, 471 U.S. at 486 (internal quotation marks omitted). Although Virginia may be less convenient for Sleeping Organic than a South Carolina forum, the defendant has not shown that the burden of litigating here is "so great as to make unfair on that basis alone the exercise of jurisdiction." First Am. First, Inc. v. Nat'l Assoc. of Bank Women, 802 F.2d 1511, 1517 (4th Cir. 1986); see also World-Wide Volkswagen, 444 U.S. at 294 (recognizing nearly forty years ago that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome"). When the burden upon Sleeping Organic is weighed against the other factors set forth above, it cannot be said that the exercise of personal jurisdiction would be constitutionally unreasonable. The Fourth Circuit has recognized that "Virginia has a strong interest in

12

'providing effective means of redress for its residents,'" including a "principally local business operation." First Am. First, Inc., 802 F.2d at 1517 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). Moreover, the plaintiff has an "obvious interest in litigating in [its] home state."[3] Id.

In sum, after weighing all of the relevant factors, the court is convinced that this is not one of those rare situations in which the interests of Savvy Rest and Virginia are so attenuated that they are clearly outweighed by the burden of subjecting Sleeping Organic to litigation within the Commonwealth. The court therefore concludes, at this stage of the litigation, that it may properly exercise specific jurisdiction over the defendant with respect to the plaintiff's claim of false advertising.

### B. Remaining Claims

Under the doctrine of pendent personal jurisdiction, the court may also exercise jurisdiction over any other claims that "aris[e] from a common nucleus of operative fact." Noble Sec., Inc., 611 F. Supp. 2d at 556. "Most federal courts require only a loose factual connection between the claims" to meet this standard. Bennett v. Fastenal Co., 184 F. Supp. 3d 304, 308 (W.D. Va. 2016) (Dillon, J.) (internal quotation marks omitted); see also CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1114 (9th Cir. 2004) (noting that "only a 'loose factual connection between the claims'" is necessary to support the exercise of pendent personal jurisdiction) (quoting Channell v. Citicorp Nat'l Servs., Inc., 89 F.3d 379, 385 (7th Cir. 1996)).

In this case, each of the plaintiff's claims against Sleeping Organic derives from the defendant's alleged efforts to unfairly and unlawfully "divert business" from the plaintiff. Compl. ¶ 37; see also id. ¶ 51 (alleging that the defendant used the plaintiff's trademark "to divert consumers to the Defendant's website"); Id. ¶ 56 (alleging that the defendant is diverting

---

[3] Although Savvy Rest has retail locations in two other states, the company was formed in Virginia and maintains its principal place of operation here. Compl. ¶ 1.

13

business by using the plaintiff's trademark in connection with the sale of mattresses); Id. ¶ 62 (alleging that the defendant's false advertising is causing a diversion of sales); Id. ¶ 67 (alleging that the defendant has infringed the plaintiff's trademark rights in an effort to "divert customers" and "deceive consumers"). Consequently, the court is satisfied that the plaintiff's claims are sufficiently connected to support the exercise of pendent personal jurisdiction. See, e.g., CE Distribution, LLC, 380 F.3d at 1114 (concluding that the exercise of pendent personal jurisdiction was appropriate where each claim was based on "competing sales of electronic products"); Ultratech, Inc. v. Ensure Nanotech (Beijing), Inc., 108 F. Supp. 3d 816, 823 (N.D. Cal. 2015) (finding the adjudication of all claims appropriate under the doctrine of pendent personal jurisdiction where each claim arose from the defendant's efforts to unfairly compete with the plaintiff); Int'l Sports Mgmt. v. Stirling Bridge Grp., Inc., No. 03-9027, 2004 U.S. Dist. LEXIS 8716, at *8 (N.D. Ill. 2004) (finding a sufficient factual relationship where each of the plaintiff's claims stemmed from a scheme to poach the plaintiff's clients).

Additionally, the court is convinced that judicial economy, the avoidance of piecemeal litigation, and the overall convenience of the parties and witnesses strongly weigh in favor of the exercise of pendent personal jurisdiction. See Action Embroidery Corp. v. Alt. Embroidery, Inc., 368 F.3d 1174, 181 (9th Cir. 2004) (holding that each of these interests is best served by adopting the doctrine of pendent personal jurisdiction); see also Noble Sec., Inc., 611 F. Supp. 2d at 556. Accordingly, even assuming that the court lacks an independent basis to assert personal jurisdiction over any of the remaining claims under the Lanham Act or Virginia law, the court finds it appropriate to exercise pendent personal jurisdiction over such claims.

## II. Venue

In addition to seeking dismissal for lack of personal jurisdiction, the defendant argues that the case should be dismissed on the basis of improper venue. See Fed. R. Civ. P. 12(b)(3) (authorizing dismissal for improper venue). For the following reasons, the court disagrees.

"The Lanham Act has no special venue provision and thus the general venue statute is applicable." Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995). The general venue statute provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "The statute does not posit a single appropriate district for venue." Woodke, 70 F.3d at 985. Instead, "venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there." Id.

In trademark infringement actions under the Lanham Act, appellate courts have held that a "substantial part" of the events giving rise to such claims occurs in any district where consumers are likely to be confused by the accused infringement, "whether that occurs in one district or in many." Cottman Transmission Sys. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994); see also Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir. 1956) ("[I]n cases involving trademark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.") In cases involving websites, courts have held that venue was proper in a district where the defendant, whose business was located outside the district, operated a website advertising its products that was accessible in the district and made "relatively modest sales" to customers there. Kaia Foods, Inc. v. Bellafiore, 70 F. Supp. 3d 1178, 1184 (N.D. Cal. 2014) (internal quotation marks omitted). "On the other hand,

15

courts have generally held that the mere fact that a website that displays the allegedly infringing mark [or false advertising] can be accessed in the district is not sufficient for venue in the absence of sales in the district or other acts aimed at the district."); see also 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32.64 (5th ed. Mar. 2019 update) ("The majority of courts hold that the wrong of trademark infringement occurs in the location where there are sales or advertising of goods bearing the accused mark.").

In this case, it is undisputed that Sleeping Organic's commercially interactive website is accessible in this district, that the defendant accepts orders for mattresses from residents throughout Virginia, that such orders are placed using the website, and that the orders have resulted in the sale and delivery of over 50 mattresses to Virginia residents within the past five years. Moreover, while not determinative, Savvy Rest claims that it has suffered economic harm in this district as a result of the defendant's actions. See, e.g., Gwynn v. TransCor Am., 26 F. Supp. 2d 1256, 1262 (D. Co. 1998) (noting that in evaluating the issue of venue, "courts have considered where the plaintiffs suffered the alleged harm when other events giving rise to the claim took place in the same district"). For all of these reasons, the court concludes that venue is proper in the Western District of Virginia.[4]

### III. Transfer

Sleeping Organic alternatively seeks to transfer the case to the District of South Carolina, pursuant to 28 U.S.C. § 1404(a). This statute provides that "[f]or the convenience of the parties

---

[4] Having concluded that the plaintiff's claims originate from a common nucleus of operative fact, the court need not determine whether venue is independently proper for each claim asserted in the complaint. At a minimum, the court is satisfied that venue is proper with respect to the plaintiff's claim of false advertising. Under the doctrine of "pendent venue," the court has the discretion to entertain other claims that "originate from a common nucleus of operative fact." Nabong v. Paddayuman, 289 F. Supp. 3d 131, 136 (D.D.C. 2018). In this case, the plaintiff's claims arise from a common scheme and are likely to involve many of the same witnesses. "Considerations of judicial economy and convenience therefore weigh in favor of trying [the plaintiff's claims] together in a single action." Id.; see also Basile v. Walt Disney Co., 717 F. Supp. 2d 381, 287 (S.D.N.Y. 2010) (noting that the courts have applied the doctrine of pendent venue "to alleviate the potential problems of inefficiency and piecemeal litigation that the venue rules could otherwise generate").

and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As the party seeking transfer, Sleeping Organic bears the "heavy burden" of establishing that transfer is warranted. Encompass Advisors, Ltd. v. Unapen, Inc., 686 F. Supp. 2d 607, 616 (W.D.N.C. 2009).

In deciding a motion to transfer venue, the court may consider a number of factors, including the plaintiff's choice of venue, the convenience of the parties and witnesses, and the interests of justice." Gen. Creation LLC v. LeapFrog Enters., 192 F. Supp. 2d 503, 504 (W.D. Va. 2003). "The plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of [the] defendant." Id.; see also Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015) ("As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate.") (internal quotation marks omitted).

Having carefully considered the applicable factors, the court is unable to conclude that Sleeping Organic has met its heavy burden of establishing that transfer is warranted. Because Savvy Rest filed suit in the Western District of Virginia, its home forum, Savvy Rest's choice of venue is entitled to considerable deference. Id. Thus, this factor clearly militates against transferring the case to the District of South Carolina.

To support its request, the defendant focuses primarily on the second factor, the convenience of the parties and the relevant witnesses. This factor, however, favors neither Sleeping Organic nor Savvy Rest. While Sleeping Organic argues that most of its witnesses reside in states other than Virginia, it has failed to demonstrate that requiring its defense witnesses to travel to Virginia would be unduly burdensome. Moreover, "[w]ithout evidence that these witnesses are unwilling to testify voluntarily, this factor becomes less important."

17

Nuvotronics, LLC v. Luxtera, Inc., No. 7:13-cv-00478, 2014 U.S. Dist. LEXIS 46169, at *18 (W.D. Va. Ap. 1, 2014) (Conrad, J.) (internal quotation marks omitted). Additionally, given that Savvy Rest is based in Charlottesville, the court agrees that transferring the case to the District of South Carolina would merely transfer the inconvenience of the parties from the defendant to the plaintiff.

The final factor in the transfer analysis is the interest of justice. This factor "encompasses public interest factors aimed at systemic integrity and fairness." Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006). "The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments," while "fairness is assessed by considering factors such as docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." Heinz Kettler GmbH & Co. v. Razor USA, LLC, 750 F. Supp. 2d 660, 670 (E.D. Va. 2010).

In this case, the court is convinced that the interest of justice weighs in favor of keeping the case in the Western District of Virginia. Sleeping Organic "is a local business and Virginia has an interest in providing a forum for its residents to litigate their disputes." Id. Additionally, docket conditions, while not a significant factor, do not counsel against retaining the case.[5] Finally, the court harbors no reservations with respect to its ability to adjudicate the plaintiff's claims, and the defendant has not demonstrated that any of the other elements of systemic integrity and fairness weigh in favor of transferring the case to the District of South Carolina.

In sum, after considering all of the factors relevant to a transfer of venue analysis, the court concludes that the factors weigh in favor of retaining venue in this district. Accordingly,

---

[5] Statistics from 2018 indicate that the median time from filing to trial in a civil case in the Western District of Virginia was slightly shorter than the median time in the District of South Carolina. See Federal Court Management Statistics (2018), available at https://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-management-statistics.

Sleeping Organic's alternative request to transfer venue to the District of South Carolina will be denied.

## Conclusion

For the reasons set forth above, the defendant's motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the District of South Carolina, will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 19th day of March, 2019.

_____
Senior United States District Judge